IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

GEORGE TAYLOR,

                Plaintiff,

v.

THEODORE ANDERSON, JAMES MOORE,
CHRISTOPHER BORTZ, BRANDON KLIEST,
CHLOE WARE, CHRISTOPHER OLSON,
DUSTIN ROHWER, MICHELLE KESSENICH,
and JONATHAN D. BOHNSACK,

                Defendants.[1]

OPINION and ORDER

19-cv-300-jdp

Pro se plaintiff George Taylor, who is incarcerated at Columbia Correctional Institution (CCI), says that defendant prison employees needlessly strip searched him in view of other inmates and then placed him in segregation without a mattress. He asks for a preliminary injunction ordering defendants (1) to stop strip searching inmates in the presence of other inmates; and (2) to give mattresses to inmates when placing them in segregation. Dkt. 6. But Taylor has not shown that he has a reasonable chance of success on his underlying claims, so I will deny his motion for a preliminary injunction.

Taylor also asks me to compel defendants to produce a new copy of a video recording of the incident. Dkt. 31. But defendants have since made a copy available to Taylor, so I will deny his motion as moot.

---

[1] I have updated the caption to reflect defendants' names as indicated in their answers, Dkt. 30 and Dkt. 38.

ANALYSIS

A. **Preliminary injunction**

A preliminary injunction gives temporary relief to a party during a pending lawsuit. *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). It is "a very far-reaching power" that a court should use only when "a case clearly demand[s] it." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 389 (7th Cir. 1984) (quoting *Warner Bros. Pictures, Inc. v. Gittone*, 110 F.2d 292, 293 (3d Cir. 1940) (per curiam)). To get a preliminary injunction, Taylor must make a threshold showing of three things: (1) he has a reasonable chance of success on his underlying claims; (2) he cannot get an adequate remedy without the injunction; and (3) he would suffer irreparable harm without the injunction. *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 972 (7th Cir. 2012). If Taylor shows each of these things, I must then balance the harm that denying the injunction would cause to Taylor against the harm that granting the injunction would cause to defendants. *Id.* If this balance weighs in Taylor's favor, I must then assess the requested relief under the requirements of the Prison Litigation Reform Act, which imposes additional restrictions on injunctive relief in prisoners' lawsuits.

The first question is whether Taylor has a reasonable chance of success on his underlying claims. At the screening stage, I was required to take the allegations in Taylor's complaint as true, meaning that Taylor wasn't required to support his claims with any evidence. *Bond v. Aguinaldo*, 228 F. Supp. 2d 918, 919 (N.D. Ill. 2002). But now that he seeks a preliminary injunction, Taylor has to provide enough evidence to show that his underlying claims have at least a "better than negligible" chance of success at trial. *Roland Mach.*, 749 F.2d at 387 (quoting *Omega Satellite Prods. Co. v. City of Indianapolis*, 694 F.2d 119, 123) (7th Cir. 1982)). Taylor

has not shown a reasonable chance of success on the merits for either of his claims. So I do not need to consider the remaining factors, and I will deny his motion for a preliminary injunction.

1. **Taylor's strip search claim**

Taylor says that defendants Anderson, Moore, Bortz, Kliest, and Ware violated the Eighth Amendment by strip searching him in view of Ware, who is female, and of other prisoners. A strip search does not violate the Eighth Amendment if it is performed for a legitimate security purpose, even if it is in view of a correctional officer of the opposite sex. *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). But a search that is "conducted in a harassing manner intended to humiliate and inflict psychological pain" does violate the Eighth Amendment. *Id.*

The parties agree that these defendants secured Taylor to the door of the segregation unit's shower to search him and that three officers surrounded Taylor during the search. They also agree that these defendants covered Taylor with a smock and escorted him down the hall to a cell when the search was complete.

Taylor and defendants present diverging views of the details of the search. Defendants say that they took efforts to prevent Taylor from being exposed to other inmates during the search. They say that the officers searching Taylor shielded him from the sight of other inmates while searching him. They also say that it is unlikely that any inmates could see Taylor's buttocks or genitals because of the viewing angle from the inmates' small windows on their cells. They deny Taylor's allegation that they were laughing, smirking, and grinning during the search. And they say that after the search, they wrapped a smock around Taylor's waist, covering his buttocks and genitals while escorting him to his cell.

Taylor says that defendants could have chosen to search him from within the shower unit rather than outside the shower unit's door. He objects that defendants should not be allowed to speculate about what other inmates could have seen. He cites a declaration from a fellow inmate, who says that he saw the search from his cell, although he does not say that he was able to see Taylor's buttocks or genitals. Dkt. 29, ¶ 4. He says that defendants were smirking and laughing while searching him. And he says that defendants did not place the smock around his waist but rather held it near his waist.

The conflict between Taylor's version and defendants' is resolved by the video that Ware made of the search, which supports defendants' version. The video shows that the officers conducting the search of Taylor stood between his body and other inmates' doors. Although not all of the officers' faces are visible throughout the video, no officer is shown smiling or smirking, and no laughter is audible from any of the officers. And the video shows an officer wrapping a smock around Taylor's waist and holding it in place as the officers escorted him to his cell, covering him below the waist.

Defendants' recorded actions do not support Taylor's contention that they were trying to humiliate or harass Taylor or inflict psychological pain on him. The court of appeals recently considered a nearly identical search conducted at CCI, concluding that it did not violate the Eighth Amendment. *Lewis v. Stephens*, 710 F. App'x 703, 705 (7th Cir. 2018) (per curiam) (upholding strip search conducted in "the most private part of the segregation unit, the shower area" in which inmate "was surrounded by officers who substantially blocked the view of others, including a nearby inmate" and after which the inmate "had a towel wrapped around his lower body"). Taylor has not shown that he has a reasonable chance of success on this claim.

### 2. Taylor's mattress claim

Taylor says that all of the defendants violated the Eighth Amendment by refusing to give him a mattress or other bedding to sleep on during his first night in segregation. The Eighth Amendment requires prison officials to provide inmates with reasonably adequate bedding. *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). But a prisoner must show an "extreme deprivation" of his constitutional rights to succeed on an Eighth Amendment claim. *Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999)). So a short-term lack of bedding may not be unconstitutional. *See Tesch v. Cty. of Green Lake*, 157 F.3d 465, 476 (7th Cir. 1998) (courts should consider both the severity and duration of alleged Eighth Amendment violations). And the court of appeals concluded that a prisoner who had to sleep on a "slab of metal" for two and a half days—considerably longer than Taylor—due to a lack of dry bedding had not suffered an Eighth Amendment violation. *Johnson v. Pelker*, 891 F.2d 136, 138–39 (7th Cir. 1989). Taylor has not shown a reasonable chance of success on this claim, either.

### B. Motion to compel

Taylor asks me to compel defendants to produce a new copy of Ware's video recording of the strip search. Dkt. 31. He says that the copy maintained by CCI does not work. Although Taylor does not describe the problem with the recording, defendants say that CCI staff determined that the problem was with the laptop on which they were attempting to play the recording, not with the recording itself. Dkt. 35, at 1. They say that after Taylor filed his motion to compel, CCI staff played the recording for Taylor using an external drive. And they say that Taylor now has access to the recording. So I will deny Taylor's motion as moot.

ORDER

IT IS ORDERED that:

1. Plaintiff George Taylor's motion for a preliminary injunction, Dkt. 6, is DENIED.

2. Taylor's motion to compel, Dkt. 31, is DENIED.

Entered March 27, 2020.

                                        BY THE COURT:

                                        /s/
                                        _____
                                        JAMES D. PETERSON
                                        District Judge