IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GEORGE TAYLOR,

                Plaintiff,

  v.

THEODORE ANDERSON, JAMES MOORE,
CHRISTOPHER BORTZ, BRANDON KLIEST,
CHLOE WARE, CHRISTOPHER OLSON,
DUSTIN ROHWER, and
JONATHAN D. BOHNSACK,

                Defendants.

OPINION and ORDER

19-cv-300-jdp

---

Pro se plaintiff George Taylor says that prison officials at his former institution, Columbia Correctional Institution (CCI), violated his rights during and after a strip search. He says that the search exposed him to the view of other inmates and a female correctional officer. And he says that after the search, he was cut when the trap in his cell door closed on his naked buttock. He brings claims under the Eighth Amendment to the United States Constitution as well as state-law claims for negligence, intentional infliction of emotional distress, and battery.

Defendants have moved for summary judgment on all of Taylor's claims, and they ask me to assess Taylor a "strike" under 28 U.S.C. § 1915(g) by deeming his claims to be frivolous and malicious. Dkt. 98. In his response brief, Taylor concedes that defendants are entitled to summary judgment on his claims against defendants Christopher Olson, Dustin Rohwer, and Jonathan Bohnsack, based on Taylor's allegation that they failed to obtain medical care for Taylor's cut after the search. Dkt. 112, at 4–6. Based on Taylor's concession, I will grant summary judgment to defendants on those claims without further discussion. For the reasons explained below, I will grant the remainder of defendants' motion and dismiss this case. I agree

that Taylor's claims are frivolous because they are utterly without factual support, so I will also assess him a strike.

Defendants also ask me to stay the deadlines in this case pending an order on their motion for summary judgment. Dkt. 121. Because I am granting their motion for summary judgment in full, I will deny this motion as moot.

UNDISPUTED FACTS

The following facts are undisputed except where noted.

On January 7, 2019, defendant CCI Correctional Officers James Moore, Christopher Bortz, Brandon Kliest, and Chloe Ware responded to a radio transmission requesting assistance in CCI Housing Unit 5, where plaintiff George Taylor was incarcerated. These officers were the four "first responders" for their shift, responsible for responding to support calls like this one. Taylor had taken a prison telephone into the unit's shower and was refusing orders from defendant Captain Theodore Anderson to leave the shower, return the phone, and go back to his cell. Taylor eventually complied with Anderson's orders. Defendants placed Taylor in a restraint chair, after which Anderson gave a handheld video camera to Ware, who began recording the incident. The incident was also recorded on Anderson's and Moore's body cameras.

Anderson decided to place Taylor into CCI's restrictive housing unit on controlled separation status because of his behavior. Before placing Taylor into restrictive housing, Anderson decided to perform what's known as a staff-assisted strip search, in which prison staff restrain the inmate, remove his clothes, and search his body.

Anderson decided to perform the search at the end of the hallway just outside the restrictive housing unit's shower. Moore and Kliest took Taylor to the restrictive housing unit, followed by Anderson, Bortz, and Ware (who was still recording). Video of the search shows that the shower is at the end of a long, narrow hallway on which several cells are located. The officers tethered Taylor to the shower door, which stood open in the hallway. Taylor faced the shower door and the wall at the end of the hallway during the search. Bortz and Kliest stood behind Taylor on either side of him, with Moore standing directly behind him. Bortz held Taylor's right arm and searched the right side of his body while Kliest did the same on the left. Moore directed and assisted with the search. As directed, Taylor partially squatted while Moore inspected his buttocks. While Bortz, Kliest, and Moore searched Taylor, Anderson stood behind them, with Ware standing behind Anderson and recording the search with the handheld camera. Ware's video shows that her view of Taylor's body was substantially blocked by Anderson, Bortz, Kliest, and Moore. Her video also shows that Bortz, Kliest, and Moore would have substantially blocked other inmates from seeing Taylor's body through their cell windows.

After the search, Moore, Bortz, and Kliest placed a smock around Taylor's waist. Defendants then took Taylor to a cell down the hall. They tethered him to the cell door so that his hands would be restrained while they released him into the cell. To do this, they secured one end of the tether to the handle on the outside of the door, passed the tether through the cell's trap door, then secured the other end of the tether to Taylor's hands, which were still restrained together behind his back.

Taylor stepped into the cell with his hands still tethered to the door's outer handle through the trap. Kliest and Bortz closed the cell door while Bortz held the tether. Taylor then placed his hands through the trap. The officers removed Taylor's wrist restraints and the tether,

3

after which they guided Taylor's hands back into the cell. Taylor says in a declaration that Bortz "squeezed" his buttock while removing the restraints. But Moore's body-camera footage, Dkt. 109-3, clearly shows that Bortz did not do so, so I will disregard Taylor's declaration testimony on this point.

Bortz told Taylor to pull his arms in, after which Moore, Bortz, and Kliest closed the trap. Taylor says that he yelled "aww" after the trap was closed because his buttock had been caught in the trap, but no such noise is audible on any of the three videos of the incident, so I will disregard Taylor's declaration testimony on this point.

Anderson told Taylor that he was being placed on controlled separation status until his behavior improved. Taylor then said that staff had closed the trap on his buttocks and asked for medical attention. Anderson said he would notify CCI's health services unit (HSU), which he did. Taylor was seen by HSU the following morning. Notes from the visit describe "a 2-inch superficial scratch" to Taylor's right buttock, noting "[n]o bleeding or bruising, or redness." Dkt. 110-1, at 2. Defendants suggest that Taylor could have caused this scratch himself, but they offer no evidence that he did so, so I will credit Taylor's statement that his buttock was scratched by the trap when it closed.

ANALYSIS

A. Eighth Amendment claims

Taylor brings two sets of claims under the Eighth Amendment, contending that his rights were violated when he was strip searched and when the cell's trap door was closed on his buttock. Because I agree that defendants are entitled to summary judgment on the merits of

4

these claims, I don't need to consider their arguments that they are entitled to qualified immunity for their actions.

Taylor also seeks to add a new Eighth Amendment claim based on his allegation that Bortz squeezed his buttock "in an inappropriate fondling type way" while removing his tether. Dkt. 112, at 7. But I haven't given Taylor leave to proceed on such a claim. And in any event, video of the incident clearly shows that Bortz did not touch Taylor's buttock as alleged. So Taylor cannot add this claim to the case.

1. **Strip search**

Taylor contends that defendants' strip search violated his Eighth Amendment rights. A strip search that is performed for a legitimate security purpose doesn't violate the Eighth Amendment unless it is "conducted in a harassing manner intended to humiliate and inflict psychological pain." *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003).

Taylor concedes that defendants had a legitimate security purpose in searching him, but he says that the search was intended to humiliate him for three reasons. First, he says that he could have been searched inside the shower rather than in the hallway outside the shower, where he could be seen by other inmates. But the fact that another location would have provided more privacy doesn't show that defendants chose the location to humiliate Taylor. He doesn't dispute that Anderson was following the general practice at CCI when he decided to conduct the strip search outside the shower door. Defendants explain that this location gives reasonable privacy to inmates while allowing for officer safety by keeping the search in view of the sergeant in the unit's "bubble," who can call for backup if needed. Nor does Taylor dispute that Moore, Bortz, and Kliest stood between his body and the other inmates' cells during the search or that they wrapped him in a smock immediately after the search.

Taylor cites a declaration from a fellow inmate who says that he was able to see Taylor's buttocks through his cell window. Dkt. 116. But the videos show that any exposure would have been brief and accidental, and the precautionary measures that defendants took refute any inference that they intended to expose him to the view of other inmates. The court of appeals has concluded that a strip search performed at CCI in virtually identical conditions didn't violate the Eighth Amendment. *Lewis v. Stephens*, 710 F. App'x 703, 705 (7th Cir. 2018) (per curiam) (upholding strip search conducted in "the most private part of the segregation unit, the shower area" in which inmate "was surrounded by officers who substantially blocked the view of others, including a nearby inmate" and after which the inmate "had a towel wrapped around his lower body").

Second, Taylor says that the presence of a female officer, Ware, shows defendants' intent to humiliate him. But the presence of a correctional officer of the opposite sex doesn't automatically make a strip search humiliating. *Calhoun*, 319 F.3d at 939. Taylor says that Ware's presence violated Wis. Admin. Code § DOC 306.17(2)(b), which states that "[e]xcept in emergencies, a person of the same sex as the inmate being searched shall conduct the strip search," and 28 C.F.R. § 115.15, a Prison Rape Elimination Act regulation that bars "cross-gender strip searches" conducted by correctional officers except in "exigent circumstances." I conclude below in my analysis of Taylor's negligence claims that Ware's presence didn't violate § DOC 306.17(2)(b), but even if Ware's presence did violate both regulations, that isn't relevant to whether defendants intended to humiliate Taylor. *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) ("[T]he violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established."). Defendants have provided a valid reason for Ware's presence—she was one

6

of the four first responders on duty when the call for assistance came in—and Taylor hasn't identified any evidence to suggest that this reason was a pretext for a desire to humiliate him.

Third, Taylor says that defendants were laughing and smirking during and after the search. Taylor has abandoned his earlier allegations that defendants were smirking throughout the search, just not when their faces were in view of Ware's camera. *See* Dkt. 57, at 1–2. Now that additional footage of the search is available, he says only that there was a single smile during the search. He says that about nine minutes and 50 seconds into Moore's body-camera footage, after Taylor said that a strip search in view of other inmates was "a no-no," Anderson can be seen smiling as he responds, "We're well within our rights." Dkt. 112, at 3. It's unclear whether Anderson actually smiles at this point, but I will assume for purposes of summary judgment that Anderson smiled once during the search.

Taylor also cites footage from Moore's body camera, which Moore left on as he returned to the unit's common area after the search. As Moore walks towards the other officers, Kliest says, "I try to make it fun." Although it's unclear what he's referring to, I'll infer that he was referring to the search. The officers then discuss Taylor's statement that his buttock had been caught in the trap. It's difficult to make out every word, but the gist of the conversation is clear: the officers say that they do not believe that Taylor was caught in the trap. During the conversation, Bortz says, "It definitely wasn't in the trap, so I'm thinking, I think you gave him a little squeeze."[1]

---

[1] Taylor's description of this conversation in his brief differs slightly from the video itself. But the differences are immaterial, and to the extent there are any differences, the video evidence prevails.

Taylor contends that Anderson's smile during the search and the officers' remarks afterwards "show that their actions were done during the search simply for amusement and entertainment purposes." Dkt. 112, at 3. But this is not a reasonable inference from the evidence. The only evidence that Taylor cites during the search itself is Anderson's smile. Every other aspect of the officers' conduct during their interactions with Taylor was calm and professional, which is not overcome by a brief and barely perceptible smile. Neither do the officers' remarks after the search show that they intended to humiliate Taylor. A couple of the statements—"I try to make it fun" and "I think you gave him a little squeeze"—were less than professional, though perhaps understandable after a stressful interaction with an inmate. But those statements don't show that defendants intended to humiliate Taylor during the search. Each of the officers interacted with Taylor calmly and professionally before, during, and after the search.

Taylor hasn't identified a genuine issue of material fact regarding his Eighth Amendment claims about the strip search, so defendants are entitled to summary judgment on these claims.

**2. Excessive force**

Taylor says that Moore, Bortz, and Kliest violated his Eighth Amendment rights when they closed the trap on his buttock. The Eighth Amendment prohibits prison officials from the use of excessive physical force against prisoners. *Harper v. Albert*, 400 F.3d 1052, 1065 (7th Cir. 2005). To succeed on such a claim, Taylor must show that defendants acted "maliciously and sadistically for the very purpose of causing [him] harm." *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 296 (1991)).

These defendants say in declarations that they didn't intend to close the trap on Taylor's buttock and that they don't believe that they did so. Dkts. 106–08. The video of the search taken by Moore's body camera plainly supports these assertions. Although Taylor's buttocks are visible through the trap, they aren't so near the trap that it would obviously touch them when it was closed. And again, as they did throughout their interactions with Taylor, Moore, Bortz, and Kliest acted calmly and professionally while freeing Taylor's hands and closing the trap. Even if Taylor's buttock was caught in the trap when it closed, the video shows that it would have been inadvertent rather than malicious or sadistic.

Taylor says that defendants' comments after the search support his claims. He says that Bortz says that he definitely saw Taylor's buttocks in the trap, but that's not consistent with the video from Moore's camera. Taylor hasn't identified any evidence that Moore, Bortz, or Kliest acted maliciously or sadistically in closing the trap. Defendants are entitled to summary judgment on Taylor's excessive-force claims.

**B. State-law claims**

Taylor brings three sets of state-law claims, contending that: (1) defendants negligently violated a Wisconsin regulation governing strip searches of prisoners; (2) defendants intentionally inflicted emotional distress on him during the strip search; and (3) Moore, Bortz, and Kliest committed battery by closing the trap on his buttock.

Because defendants are entitled to summary judgment on all of Taylor's federal claims, I have the discretion to decline to exercise supplemental jurisdiction over his remaining state-law claims. *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012). There is a strong presumption that I should relinquish jurisdiction to "minimiz[e] federal intrusion into areas of purely state law." *Id.* But if the court has already committed enough

resources to the case that sending it to a state court would result in substantial duplicated efforts, I may retain supplemental jurisdiction over the remaining claims. *Id.* at 480. This court has already expended significant resources on this case, including screening multiple amended complaints and deciding defendants' exhaustion motion, Taylor's motion for preliminary injunctive relief, and Taylor's multiple motions for reconsideration. So I will retain supplemental jurisdiction over Taylor's state-law claims.

### 1. Negligence

Taylor says that defendants were negligent when they strip searched him because the way that they conducted the search violated Wisconsin law in two ways: (1) the search was conducted in the hallway, so it wasn't conducted "in a clean and private place"; and (2) Ware was present during the search, so it wasn't "conduct[ed]" by "a person of the same sex as the inmate being searched." Wis. Admin. Code § DOC 306.17(2)(b). Because I conclude that these claims fail on their merits, I don't need to consider defendants' alternative argument that they're entitled to discretionary immunity regarding the manner of the search.

A negligence claim under Wisconsin law has four elements: duty, breach, causation, and injury. *Hoida, Inc. v. M & I Midstate Bank*, 2006 WI 69, ¶ 23, 291 Wis. 2d 283, 717 N.W.2d 17. Even if § DOC 306.17 imposes a duty on prison officials to conduct strip searches in a particular way, Taylor hasn't shown that defendants breached that duty.

Taylor's first argument fails because he hasn't identified any evidence that the hallway was inadequately clean or private. He raises the issue of cleanliness for the first time in his brief, offering only his own conclusory assertion that "the hallway is not a clean . . . place" in support of the point without citing any evidence. And nothing in the videos of the search suggests that the hallway was unclean. Regarding privacy, Taylor again says that defendants

could have given him more privacy by searching him within the unit shower rather than outside it. But the regulation doesn't require strip searches to be conducted in the *most* private location available, only in *a* private place. Again, defendants searched Taylor at the end of a long, narrow hallway, placing themselves between Taylor and the other inmates' cells to minimize the chance that another inmate might see Taylor during the search. The evidence doesn't show that defendants conducted the search in an inadequately clean or private place.

Taylor's second argument fails because Ware didn't conduct the strip search; indeed, she could barely see Taylor during the search. Although the regulation doesn't define what it means to "conduct" a strip search, common sense says that an officer conducting a strip search must at least be able to visually inspect the inmate, particularly his private areas. Ware says in a declaration that she turned her head during the search to give Taylor additional privacy. Dkt. 101, ¶¶ 14–15. But even if she didn't, Ware's video shows that her view of Taylor from the waist down was blocked by the other officers' bodies for all but about one second of the strip search, occurring about eight minutes and five seconds into the video, when Anderson briefly moved aside. And even then, only a small portion of Taylor's left buttock is visible, as her view of the rest of his backside is blocked by the other officers. During most of the search, Ware could see only the back of Taylor's right arm and shoulder. Ware didn't touch Taylor, nor was she in a position to visually inspect his private areas. So she did not "conduct" the search under any reasonable interpretation of the regulation.

Taylor hasn't identified a breach of any duty that defendants might have owed him, so defendants are entitled to summary judgment on his negligence claims.

### 2. Intentional infliction of emotional distress

Taylor says that defendants intentionally inflicted emotional distress on him during the strip search. These claims require Taylor to prove four elements against each defendant: (1) the defendant intended his or her conduct to cause emotional distress; (2) the defendant's conduct was "extreme and outrageous"; (3) the defendant's conduct caused Taylor's emotional distress; and (4) Taylor "suffered an extreme disabling emotional response" due to the defendant's conduct. *Rabideau v. City of Racine*, 2001 WI 57, ¶ 33, 243 Wis. 2d 486, 627 N.W.2d 795.

Defendants challenge Taylor's claims on each of these elements, but I need only to consider one, which is whether defendants' conduct was extreme and outrageous. For defendants' conduct to meet this requirement, it "must be such that an average member of the community would find it to be a complete denial of the individual's dignity as a person." *Gianoli v. Pfleiderer*, 209 Wis. 2d 509, 563 N.W.2d 562, 567 (Ct. App. 1997). A strip search is an embarrassing and undignified experience. But the manner in which defendants conducted the search didn't undermine Taylor's personal dignity any further than the search itself. To the contrary, defendants attempted to protect Taylor from unnecessary embarrassment by searching him at the furthest end of the hallway, shielding his body from other inmates by positioning themselves behind him, and covering him with a smock immediately after the search.

Taylor also says that Moore, Bortz, and Kliest engaged in extreme and outrageous conduct by "intentionally slamming [his] buttcheeks in the trap." Dkt. 112, at 8. But the video shows that they did not intend to close the trap on his buttocks at all, much less that they slammed it shut on him. Rather, it shows that Taylor's buttocks weren't visibly inside the trap

when these defendants closed it. And it doesn't show that they forcefully closed the trap. Nothing about this conduct was extreme or outrageous either.

Finally, Taylor says that defendants' "joking and laughing" after the incident was extreme and outrageous. *Id.* But it's defendants' conduct *during* their interactions with Taylor that matters for this element, not their conduct when Taylor wasn't present. Extreme and outrageous conduct is a required element because it makes it "more probable that the plaintiff did, in fact, suffer the emotional distress alleged." *Alsteen v. Gehl*, 21 Wis. 2d 349, 124 N.W.2d 312 (1963). The way that defendants acted when Taylor wasn't present says nothing about whether Taylor suffered any emotional distress, so it simply isn't relevant to this element.

Taylor hasn't identified any extreme and outrageous conduct by defendants, so they are entitled to summary judgment on this claim.

3. **Battery**

Taylor says that Moore, Bortz, and Kliest committed battery because they closed the trap on his buttocks. Defendants contend that Taylor's battery claims must be dismissed because he failed to comply with Wisconsin's notice-of-claim statute, Wis. Stat. § 893.82. That statute requires a claimant bringing a civil action against a state employee to serve written notice of the claim on Wisconsin's attorney general within 120 days of the event giving rise to the action. Wis. Stat. § 893.82(3). The notice must be served on the attorney general either by personal service or certified mail. Wis. Stat. § 893.82(5). A claimant who is a prisoner may not commence a civil action against a state employee "until the attorney general denies the claim or until 120 days after the written notice . . . is served upon the attorney general, whichever is earlier." Wis. Stat. § 893.82(3m).

13

The statute is jurisdictional and requires strict compliance. *Riccitelli v. Broekhuizen*, 595 N.W.2d 392, 399, 227 Wis. 2d 100 (1999). So if Taylor did not comply precisely with the statute's requirements, this court lacks the power to hear his claim. *Ibrahim v. Samore*, 348 N.W.2d 554, 558, 118 Wis. 2d 720 (1984). Because Taylor is the party invoking this court's jurisdiction, he bears the burden of showing that he complied with the statute. *See United Phosphorous, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) ("The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction."), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012).

Taylor attempted to file two notices of claim regarding these events. The first, postmarked February 27, 2019, was sent by first-class mail rather than certified mail or personal service, as required by the statute. Dkt. 111-1. Because this notice of claim wasn't served according to the statute's requirements, I can consider it only if strict compliance with the statute was impossible. *Sorenson v. Batchelder*, 2016 WI 34, ¶ 40, 368 Wis. 2d 140, 885 N.W.2d 362. Taylor says in a declaration that he filled out the proper paperwork to send the notice of claim by certified mail. Dkt. 117, ¶ 5. But he doesn't submit any proof that he did so, such as a receipt or a copy of his paperwork. Allowing Taylor to rely on this faulty notice of claim would frustrate the purpose of the statute, as it would allow any prisoner to avoid the statute's service requirements by simply alleging that a mistake must have occurred in the mail room. So I cannot consider Taylor's first notice of claim.

Defendants concede that Taylor's second notice of claim, Dkt. 111-2, was timely served on the attorney general by certified mail. They concede that notice was sufficient for Taylor's claims for negligence and intentional infliction of emotional distress, but they say that it did not give notice of his battery claims.

14

In this notice, the only statement that potentially relates to Taylor's battery claims is the sentence, "Taylor also was injured during this situation." *Id.* at 1. This statement doesn't satisfy the statute's requirement that the notice of claim "stat[e] the time, date, location and the circumstances of the event giving rise to the claim." Wis. Stat. § 893.82(3). Taylor contends that this statement gave adequate notice of his battery claim because he couldn't be expected to "know who did what, why and how things happened" before he saw video of the incident. Dkt. 112, at 6. But Taylor's notice didn't include *any* circumstances of the alleged battery, even those that he would have been aware of at the time, so he didn't give notice of his battery claims. *See Hanson v. Hestekind*, No. 20-cv-429-bbc, 2020 WL 6701871, at *2 (W.D. Wis. Nov. 13, 2020) (notice of claim was deficient because it contained "no specific allegations" regarding "what negligent actions [defendant] took that injured plaintiff").

Because Taylor didn't provide adequate notice of his battery claims, I lack jurisdiction to hear them, so defendants are entitled to summary judgment on these claims. But even if I did have jurisdiction, defendants would be entitled to summary judgment on the merits of the claims. One of the elements of a battery claim is that the defendant must have intentionally used force or violence against the plaintiff. *Vandervelden v. Victoria*, 177 Wis. 2d 243, 502 N.W.2d 276, 278 (Ct. App. 1993). As discussed above, Taylor hasn't identified any evidence that these defendants intentionally injured him.

## C. Strike request

Defendants ask me to deem Taylor's claims to be frivolous and malicious because they are inconsistent with the video evidence. Although defendants don't cite 28 U.S.C. § 1915(g) in their request, I understand that they are asking me to assess Taylor a "strike" under that statute. Section 1915(g) restricts a prisoner's ability to proceed in forma pauperis if he has had

15

three or more previous lawsuits "dismissed on the grounds that [they were] frivolous, malicious, or fail[ed] to state a claim upon which relief may be granted." I agree with defendants. Taylor's claims are entirely factually unsupported. Taylor's allegations are directly contradicted by the video evidence, which shows that defendants acted with commendable calm and professionalism throughout their interactions with Taylor. Taylor's claims were frivolous, so I will assess him a strike under § 1915(g).

ORDER

IT IS ORDERED that

1. Defendants' motion for summary judgment, Dkt. 98, is GRANTED. The clerk is directed to enter judgment in favor of defendants, close this case, and assess Taylor a strike under 28 U.S.C. § 1915(g).

2. Defendants' motion for a stay, Dkt. 121, is DENIED as moot.

Entered March 3, 2021.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge